

**U.S. Department of Justice**

*United States Attorney*

*District of New Jersey*

---

*Elisa T. Wiygul*  
*Assistant United States Attorney*

*402 East State Street, Suite 402*  
*Trenton, New Jersey 08608*

*(609) 989-2190*

March 1, 2021

**VIA ECF**

Honorable Brian R. Martinotti  
United States District Judge  
Clarkson S. Fisher Building & U.S. Courthouse  
402 East State Street, Room 2020  
Trenton, New Jersey 08608

    Re:   *United States v. Malcolm C. Donley*,  
           Crim. No. 88-66 (BRM)

Dear Judge Martinotti:

    The United States submits this letter brief in opposition to defendant Malcolm C. Donley's pro se motion for compassionate release. Donley is serving a life sentence for first-degree murder of his wife. Lacking any medical condition that places him at higher risk from COVID-19, Donley cannot show "extraordinary and compelling reasons" warranting compassionate release. Moreover, particularly given that he has already contracted and recovered from COVID-19 and he is serving a life sentence for the most serious of crimes, the § 3553(a) factors weigh strongly against granting him the windfall of release. This Court should deny the motion.

**I.    Factual Background and Procedural History**

    Donley, now age 63, was indicted in March 1988 for murdering his wife while on a military base, in violation of 18 U.S.C. § 1111. He was subsequently tried and convicted of that offense. *See* Docket No. 1 (reproduction of 1988 paper docket); *United States v. Donley*, 878 F.2d 735 (3d Cir. 1989).[1] The Hon. Garrett E. Brown, U.S.D.J., sentenced Donley to life imprisonment, the

---

[1] Because of the age of this case, this statement of facts is taken from the Third Circuit's decision affirming Donley's conviction and sentence, the public docket sheet, reproduced at Docket No. 1, and the BOP's records. After a reasonable inquiry, the Government has been unable to obtain the underlying documents such as indictment, Presentence Report, sentencing submissions, and the like.

statutory mandatory minimum sentence.  *Donley*, 878 F.2d at 739-41.  The U.S. Court of Appeals for the Third Circuit affirmed Donley's conviction and sentence on June 30, 1989.  *Id.* at 736.

Donley is presently serving his sentence at FCI Pekin, in Pekin, Illinois.  The BOP has designated him as requiring a medium security place of confinement, though minimum recidivism risk.  *See* Inmate Profile (Ex. A[2]).  Donley has sustained approximately 12 disciplinary incidents during his time in BOP custody, including possessing a dangerous weapon.  The most recent was in 2016.  *See* Inmate Discipline Data (Ex. B).  He has also taken a number of educational classes, including earning his GED.  *See* Inmate Education Data (Ex. C).

Donley has documented high blood pressure (hypertension) and high cholesterol.  *See, e.g.*, Medical Records[3] (Ex. D) at 4, 33 (provided to chambers via e-mail).  Neither of these is on the CDC's list of conditions that definitively cause "increased risk" from COVID-19, though hypertension is on the list of conditions that "might" put individuals at "an increased risk."  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 25. 2021).  Donley has no medical conditions that place him at higher risk of severe disease from COVID-19, according to the CDC.  *See id.*

On or about September 24, 2020, Donley sought compassionate release from the BOP, which denied the request on or about October 13, 2020.  *See* Exs. E and F.[4]  In a motion dated October 26, 2020, listed as filed on November 1, 2020, and entered onto the docket on November 17, 2020, Donley sought compassionate release from this Court.  Docket No. 2.  On or about December 4, 2020, Donley tested positive for COVID-19.  *See* Medical Records (Ex. D) at 6.  He experienced symptoms, including that his oxygen levels

---

[2] The exhibits to this letter brief will be provided to chambers separately via e-mail, rather than filed on the public docket.

[3] The medical records document was generated by a search run on February 22, 2021 and includes details regarding the previous year, as well as lists of historical conditions.  It does not include all medical records since Donley came into BOP custody in 1989.

[4] Pursuant to the authority of 18 U.S.C. § 3624(c)(2), as modified by the First Step Act and the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") § 12003(b), under the guidelines set forth in the Attorney General's March 26 and April 3, 2020 memoranda, *see* https://www.bop.gov/coronavirus/faq.jsp, the BOP has been prioritizing evaluating all inmates for their eligibility for home confinement in light of the COVID-19 pandemic.  However, Donley's life sentence and history of violence render him ineligible for this designation under the BOP's criteria.

dropped to 84%. The BOP accordingly transferred him to a local hospital, where he received treatment and later successfully returned to FCI Pekin and was removed from isolation. *See id.* at 6-12, 26-27. He is considered as having recovered as of approximately December 28, 2020. *See id.* at 26, 36.

By letter dated January 29, 2021 and docketed February 8, 2021, Donley wrote to this Court seeking a response from the Government and a ruling. Docket No. 4. The letter did not mention Donley's recent COVID diagnosis and recovery. This Court ordered the Government to respond on or before March 1, 2021.

## II.    Legal Standard

"Once a federally imposed sentence commences, a district court has limited authority to modify that sentence." *United States v. DeSciscio*, Crim. No. 88-239 (PGS), 2020 WL 3893711, at *3 (D.N.J. July 10, 2020) (citing *Dillon v. United States*, 560 U.S. 817, 825 (2010)). Under 18 U.S.C. § 3582(c)(1)(A), however, this Court may, in certain circumstances, grant a defendant's motion to reduce his term of imprisonment. Before filing that motion, the defendant must first request that BOP file such a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant the defendant's motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. §] 3553(a)" if it finds, as relevant here, that: (i) "extraordinary and compelling reasons warrant such a reduction"; and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of establishing that he is entitled to a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (18 U.S.C. § 3582(c)(2)); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014) (18 U.S.C. § 3582(c)(2)); *United States v. Epstein*, Crim. No. 14-287 (FLW), 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (Wolfson, C.J.) (18 U.S.C. § 3582(c)(1)(A)). As the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (citations omitted). "Mere speculation concerning possible future conditions does not constitute a compelling reason for release." *United States v. Epstein*, Crim. No. 14-287 (FLW), 2020 WL 2537648, at *6 (D.N.J. May 19, 2020) (Wolfson, C.J.) (internal quotations omitted); *accord United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it

may spread to a particular prison alone cannot independently justify compassionate release.").

As the statute contemplates, the Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if it finds that: (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. Under the explicit terms of § 3582, this policy statement is binding on the Court. *See Dillon*, 560 U.S. at 826 (in motion for a reduction in sentence under 18 U.S.C. § 3582(c)(2), Sentencing Commission's policy statement was binding upon Court).[5]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, the standard is met if a defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, App. Note 1(A)(i). Second, the standard is met if the defendant is:

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, App. Note 1(A)(ii). The Application Note also sets out other conditions, not applicable here, that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G.

---

[5] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

§ 1B1.13, App. Note 1(B)-(C).[6]  Finally, the Application Note recognizes the possibility that the BOP could identify other grounds that amount to "extraordinary and compelling reasons."  U.S.S.G. § 1B1.13, App. Note 1(D).

The inquiry does not end there.  Even if the defendant has shown he is eligible for compassionate release based on "extraordinary and compelling reasons," the Court must still assess whether the factors under 18 U.S.C. § 3553(a) justify early release, including whether the defendant is a danger to the community under 18 U.S.C. § 3142(g).[7]  *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2); *see also United States v. Pawlowski*, 967 F.3d 327, 329-30 (3d Cir. 2020) ("[B]efore granting compassionate release, a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable.'" (quoting 18 U.S.C. § 3582(c)(1)(A))).

The familiar provisions of section 3553(a) require the sentence to reflect the purposes of sentencing, which include: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2). This Court must also consider, as relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the kinds of sentences available," § 3553(a)(3), the Guidelines and Guidelines range, § 3553(a)(4), the Guidelines' policy statements, § 3553(a)(5), and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6).

---

[6] Donley states that his mother has medical needs and could benefit from his care.  This situation would not fall within the Application Note, which provides that an inmate would be eligible for compassionate release if his or her minor child, spouse, or registered partner needed particular types of care.

[7] Section 3142(g) sets forth factors that help courts assess whether releasing an inmate will pose a danger to others and the community, including "the nature and circumstances of the offense charged," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

## III.   The Court Should Deny Donley's Request for Release

### A.   Donley Has Exhausted His Administrative Remedies

As a threshold matter, Donley has exhausted his administrative remedies.  A court may grant a defendant's own motion for a reduction in his sentence *only* if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

BOP records show that Donley sought compassionate release from the BOP on or about September 24, 2020, and the BOP denied that relief on or about October 13, 2020.  *See* Exs. E and F.  Because more than 30 days have elapsed since the warden received his release request, Donley has satisfied the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A), and the Court may consider his Motion on the merits.[8]

### B.   Donley Has Failed To Show "Extraordinary and Compelling Reasons" That Would Warrant Reducing His Sentence

Donley has no medical conditions that place him at heightened risk from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 25, 2021).  Based on this fact alone, Donley cannot show "extraordinary and compelling reasons" for release.  As the Third Circuit has pronounced, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *Raia*, 954 F.3d at 597; *see also Epstein*, 2020 WL 2537648, at *6 ("Mere speculation concerning possible future conditions does not constitute a compelling reason for release." (internal quotations omitted)).

Moreover, Donley recently contracted, and recovered from, COVID-19.  Of course, it is regrettable that anyone should experience COVID-19 and its symptoms.  However, under the circumstances, Donley's experience is further proof that compassionate release is not warranted.  First, though the exact degree and duration of protection is still being studied, the medical and scientific community believes that contracting and recovering from COVID-19 provides some protection against future infection.  *See, e.g.*, National Institutes of Health, *Lasting immunity found after recovery from COVID-19* (Jan. 26, 2021),

---

[8] *See United States v. Harris*, 973 F.3d 170 (3d Cir. 2020) (per curiam) (court may consider compassionate release motion once 30 days have elapsed from warden's receipt of request, regardless of whether BOP has responded to request during that time).

*available at* https://www.nih.gov/news-events/nih-research-matters/lasting-immunity-found-after-recovery-covid-19 (study finding "[t]he immune systems of more than 95% of people who recovered from COVID-19 had durable memories of the virus up to eight months after infection); BOP, *COVID-19 Vaccine Guidance* at 8 (Jan. 4, 2021), *available at* https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf (last visited Feb. 25, 2021) ("evidence suggests reinfection is uncommon in the 90 days after initial infection").

Second, the record reflects that at a certain point, FCI Pekin officials determined that Donley required greater medical treatment, so they transferred him to a hospital. This shows that Donley is receiving adequate medical care in the BOP environment and there is no cause to release him.

Additionally, according to the BOP's website, FCI Pekin currently has 0 inmates and 9 staff with active cases of COVID-19. *See* https://www.bop.gov/coronavirus/ (last visited Mar. 1, 2021). Additionally, as of March 1, 2021, approximately 91 staff and 89 inmates at FCI Pekin were fully vaccinated against COVID-19. *Id. See generally* "COVID-19 Vaccination Efforts Commended," https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp (last visited Jan. 25, 2021).[9] While the extent to which vaccinated individuals can still become infected and/or transmit the virus to others is still unknown, it is reasonable to believe that at a certain point being around a large number of vaccinated individuals provides some measure of protection to non-vaccinated individuals. *See, e.g.*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (discussing herd immunity); https://www.who.int/news-room/q-a-detail/herd-immunity-lockdowns-and-covid-19 (same). "This uncertainty cuts against compassionate release," as Donley bears the burden of showing extraordinary and compelling reasons to shorten his sentence. *United States v. Molley*, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020).

In sum, these conditions at FCI Pekin do not counsel compassionate release, let alone for an offender serving a life sentence who has no qualifying medical conditions.

---

[9] Donley himself has not been vaccinated. The BOP's vaccination policy recommends deferring the vaccination of inmates, like Donley, who have recovered from COVID-19 within the past 90 days. *See* BOP, *COVID-19 Vaccine Guidance* at 8 (Jan. 4, 2021), *available at* https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf (last visited Feb. 25, 2021) ("evidence suggests reinfection is uncommon in the 90 days after initial infection").

### C.     The § 3553(a) Factors Weigh Against Release

Even if Donley could carry his burden of showing an "extraordinary and compelling reason" for release, which he cannot, the Court should deny his request because the § 3553(a) factors weigh strongly in favor of requiring him to continue serving his life sentence. That sentence was, and still is, mandatory for his offense of conviction—first-degree murder in violation of 18 U.S.C. § 1111. And it still accurately reflects the term of imprisonment necessary to accomplish the goals of sentencing.

*First*, the seriousness of the crime and the circumstances of the offense support the life sentence. 18 U.S.C. §§ 3582(a)(1), (a)(2)(A). As the Third Circuit described, Donley killed his wife—a sergeant in the Air Force who was trying to separate from Donley at the time—"by repeatedly striking her in the head with a hatchet and a meat cleaver" and "cut her neck with a knife." *Donley*, 878 F.2d at 736. This gruesome offense could not be more serious.

*Second*, as to Donley's history and characteristics, 18 U.S.C. § 3582(a)(1), the Government has relatively little information in the absence of the Presentence Report. Donley states that he had no prior criminal history before the instant offense, but the Classification Form that he attached to his compassionate release request to the BOP states that he has two criminal history points. *See* Ex. E at 10. The undersigned has not been able to obtain any further details about Donley's criminal history (or lack thereof) prior to the instant offense. As noted above, Donley has committed numerous disciplinary violations, including possessing a dangerous weapon in 2004, though most of his violations are more than 18 years old. In light of the nature of the instant offense, even if Donley's statement regarding a lack of a prior criminal history is accurate, that fact does not outweigh the other factors that clearly point to denying release.

*Third*, the need for deterrence of the heinous crime of murder and to protect the public from further crimes of the defendant counsel retaining his original sentence. 18 U.S.C. § 3553(a)(2)(B)-(C).

*Finally*, the need to avoid unwarranted sentence disparities militates against reducing Donley's sentence. 18 U.S.C. § 3553(a)(6). Donley was convicted of a crime that requires a mandatory minimum life sentence; similarly situated defendants would all receive, and serve, such a sentence.

## IV.     Conclusion

Because Donley has failed to establish extraordinary and compelling reasons that warrant a reduction in his sentence, and the § 3553(a) factors weigh against his release, the Court should deny his motion for compassionate release.

Respectfully Submitted,

RACHAEL A. HONIG
Acting United States Attorney

BY:     /s/ Elisa T. Wiygul
        ELISA T. WIYGUL
        Assistant United States Attorney

CC:     Malcolm C. Donley (via certified mail, return receipt requested)